## OKLAHOMA RY. CO. v. SEVERNS PAVING CO. et al.

No. 6778—Opinion Filed Oct. 9, 1917.

Rehearing Denied Jan. 22, 1918.

(170 Pac. 216.)

(Syllabus.)

**1. Municipal Corporations — Reassessment —Mandamus.**

Where a contract for street paving has been let by municipal authorities, mandamus will lie to compel a reassessment of property liable for the cost of the improvement, where the assessment is void only for lack of proper description of the property, the provisions of the statute requiring assessment by proper description being mandatory.

**2. Execution — Property Liable — Street Railroad — Constitutional Provisions.**

Under section 7, art. 9, of the Constitution, all real and personal property, or any part thereof, belonging to public service corporations, including street railways, is liable to execution and sale in the same manner as the property of individuals.

**3. Street Railroads—Voluntary Grant or Donation — Title — Statute.**

Under Rev. Laws 1910, § 511, which provides that when a plat of any addition to a city shall have been recorded, every grant or donation to any corporation shall be deemed in law a sufficient conveyance to vest the fee simple of such land, and shall be considered to all intents and purposes a general warranty, and section 1175, which provides that every estate in land conveyed shall be deemed an estate in fee simple unless limited by express words, and section 1382, which confers on railway corporations power to take a fee title to land purchased for right of way purposes, a voluntary grant or donation of land to a railway company vests it with an estate in fee, although the dedication was for railway purposes only.

**4. Municipal Corporations — Paving Improvement — Property Subject to Assessment — Statute — "Lot, Piece or Parcel."**

A tract of land 40 feet in width along the center of a city boulevard, and from which the general public are excluded by a six-inch curbing, the title to which the railway company holds by voluntary conveyance purporting to convey the fee, is a "lot, piece or parcel" of land, fronting and abutting upon the boulevard, within the meaning of the statute (Comp. Laws 1909, § 724), and subject to assessment for the cost of paving said boulevard.

**5. Judgment—Res Judicata—Application.**

The doctrine of res judicata cannot be applied to judgments or decrees which merely interpret general statutes, and the obligations of citizens under them, except in so far as such judgments or decrees involve findings of fact to which such interpretation has been applied.

Kane, J., dissenting.

Error from District Court, Oklahoma County; George W. Clark, Judge.

Action by the Severns Paving Company and the City of Oklahoma City against the Oklahoma Railway Company. Judgment for the Paving Company, and the defendant Railway Company brings error. Affirmed.

Shartel, Dudley & Shartel and Asp, Snyder, Owen & Lybrand, for plaintiff in error.

Ames, Chambers, Lowe & Richardson, B. D. Shear, E. E. Blake, A. T. Boys, and F. N. Watson, for defendants in error.

OWEN, J. This action was brought in the district court in Oklahoma county, by the Severns Paving Company against the city of Oklahoma City and the Oklahoma Railway Company for a writ of mandamus to require the city commissioners to reassess the private right of way of the railway company along the center of Linwood boulevard to pay a proportionate part of the cost of paving said boulevard. Judgment below was for the paving company. The railway company brings the case here.

The questions involved are: (1) Whether mandamus will lie; and (2) whether the private right of way of the railway company is subject to assessment to pay the cost of paving said boulevard.

It appears the railway company is the owner of a private right of way 40 feet in width, extending along the center and between the two driveways of this boulevard. The tracks and poles of the company are along the center of this tract. The general public are excluded from this right of way, except at the street intersections, by a curbing installed by the railway.

It is urged that the writ was erroneously issued because it deprives the railway company of the right to be heard, in violation of federal and state Constitutions, and because it attempts to control discretion. After the mayor and council by proper proceedings authorized the paving and let the contract, the railway company still had the right to be heard as to the amount to be properly assessed and apportioned against its property. The statute requires the appointment of appraisers to appraise and ap-

portion the benefits to lots and tracts of land designated by council. The appraisers make written report which is filed with the city clerk. When the report is filed the statute requires the mayor and council to appoint a time for holding a session to hear any complaint or objections that may be made to this report concerning the assessment and apportionment, and notice of such session is required to be published. Section 644 of the statute (Rev. Laws 1910) provides that in the event any special assessment shall be found to be invalid, for any reason whatsoever, the city council may, in the manner provided for levying an original assessment, proceed to cause a new assessment to be made. Thus it will be seen that when the commissioners proceed in obedience to the decree of the court to reassess the property of the railway company, an opportunity will be given the company to be heard and to complain or object to the amount of the assessment. The lower court found that the assessment made by the appraisers was invalid and insufficient as an assessment against the property of the railway company, for the reason that it was made against the company, and the property subject to assessment was not described with sufficient accuracy. The writ commanded the city commissioners to reassess this right of way by proper description. After the determination to make the improvements and letting of the contract, no discretion of any kind is vested in the mayor and commissioners so far as making the assessment is concerned. The provisions of the statute requiring the appointment of appraisers to appraise and apportion the benefits to the several tracts of land within the improvement district, and the making of such appraisement and apportionment, are mandatory. City of Norman v. Allen, 47 Okla. 74, 147 Pac. 1002; El Reno v. Paving Co., 25 Okla. 648, 107 Pac. 163, 27 L. R. A. (N. S.) 650. The lower court found that all of the proceedings, resolutions, and actions of the mayor and city council up to and including the ordinance levying the assessment were regular and in accordance with law in all respects, except that the property of the railway company was not described with sufficient accuracy to sustain the assessment against the company. In appointing the appraisers and in describing the property subject to assessment no discretion is vested in the municipal authorities; therefore the writ in directing the authorities to reassess the property by proper description does not seek to control any discretion. While it is true the writ in directing the reassessment by proper description names the amount fixed by the appraisers, this cannot be said to be a control of discretion of the appraisers. There appears to have been no controversy as to the amount, the railway company denying any liability whatever. Since the assessment must be made under the provisions of section 644, supra, as an original assessment, it follows that the amount as fixed by the void assessment is immaterial.

Counsel urge in support of the contention that the strip of land in question is not subject to assessment for street improvement: (1) The limit of the burden which the statute permits to be imposed upon the railway company with respect to paving is to require it to pave between the tracks and a narrow space on either side of same, as provided by section 722, Comp. Laws 1909, the franchise ordinance of the city, and the dedication of such private right of way; (2) the right of way of the railway company in the street does not come within the expression, "lots, pieces or parcels of land fronting and abutting upon any such [the] improvement," within the meaning of the statute (section 724); (3) the right of way of the railway company is a part of the street, and cannot "abut" upon the street; (4) if the statute imposes a lien upon a portion of the roadbed and right of way of the railway company, it is void as against public policy, which forbids the breaking up of a system and the crippling of public service corporations; (5) the private right of way in question is not susceptible to benefits within the meaning of the Constitution and statutes of the state, and under the evidence offered is not benefited by the improvement; (6) the decision of the United States District Court in the case of Oklahoma Railway Co. v. City of Oklahoma City, is res judicata.

The section of the statute, as well as the ordinance and deed of dedication referred to under the first proposition urged, and the authorities cited by counsel in support of this proposition, have reference to street paving along the surface of which the tracks of the railway company are laid, and the space actually occupied as a right of way over which the railway company has an easement only. They have no application to a private right of way 40 feet in width in which the railway company owns the fee, and along the center of which the tracks are laid. In the case of Oklahoma City v. Shields, 22 Okla. 265, 100 Pac. 559, in dis-

cussing the assessment against the right of way of a railroad it was said:

"These railroad companies do not own their several rights of way, but simply occupy them and have easements therein obtained from the public. If in any case they have purchased and own the land occupied by and adjoining the right of way, there is no reason why in such cases the assessments should not be made against the land so owned, and in this event the plan of assessment would be the same as against the individual, the natural person. This rule applies equally to street railways who own any portion of their right of way and abutting lands."

The fee title to the strip of land in question here appears to be in the railway company. In the dedication to the city this strip was referred to in the following language:

"Said strips of land are set aside for the exclusive use of and dedicated to the Oklahoma City and Suburban Railway, its successors and assigns, with the effect as though deeded and conveyed to said company in fee simple by separate deed."

There is no merit in contentions 2 and 3, that the 40-foot strip of land in question does not come within the expression, "lots, pieces or parcels of land, fronting and abutting upon any such improvement," within the meaning of the statute. The argument made in support of these contentions is to the effect that, the tract being within the boundaries of the boulevard, it cannot be said to "front" or "abut" upon the improvement, that being a part of the street it cannot be said to "abut" upon the street; that the railway company's interest is only an easement in the street. While this strip is along the center of the boulevard, it is in fact no part of the highway so far as the use of the public is concerned. It is separated from the highway portion of the boulevard, and the public is excluded from the use of it by a six-inch curbing. By this curbing, as well as by the terms of the dedication, this strip is reserved for the exclusive use of the railway company. It is no part of the street, in the sense urged by counsel. It is not a public highway. In the case of Arnsperger v. Crawford, 101 Md. 247, 61 Atl. 413, 70 L. R. A. 497 it was said:

"When the road, after being laid out becomes the property of the applicant, from which he may lawfully exclude the public, the use is strictly private."

It was said by this court in the case of St. L. & S. F. R. Co. v. Smith, 41 Okla. 163, 137 Pac. 714:

"A public highway, as distinguished from a private road, is one which is open to the travel of the public."

In the case of Figg v. L. & N. R. Co., 116 Ky. 135, 75 S. W. 269, the Court of Appeals of Kentucky said:

"A strip of land appropriated to use by a railroad as a right of way, and which is a 'lot,' within the meaning of the statute governing street improvements, is liable to an assessment for a street improvement."

In the same case it was also said:

"It is insisted on behalf of the railroad company that: (1) The property sought to be subjected to part of the cost of street improvement is only a right of way, and therefore cannot be charged therewith; (2) it receives no benefit from the improvement; (3) the right of way is not a lot, in the meaning of the statute governing street improvements. * * * The court concludes that its use of its right of way will be perpetual. It is therefore practically the owner of the land. If this strip of land was not occupied by the railroad company as a right of way, it would not be suggested that it was not subject to the special tax for street improvement. The purpose for which the lot is used cannot affect the question of its liability for the cost of street improvement."

By the terms "fronting and abutting," as used in the statute, is meant that between which and the improvement there is no intervening land. 25 Am. & Eng. Ency. Law (2d Ed.) 1190; Millan v. City of Chariton, 145 Iowa, 648, 124 N. W. 766. The cases relied upon by counsel in support of this contention appear to turn on the proposition that the railroad right of way, being a part of the street, and used by the public, cannot be said to "abut" upon the street. In the case of S. P. C. v. C., B. & Q. R. Co., 107 Ill. 105, cited by counsel, the question was whether the right of way of occupancy, franchises, property, and interests of the railway company in Michigan avenue are, within the meaning of the statute, contiguous property abutting upon such avenue. In that case the court said:

"And as a street cannot, in the nature of things, abut on itself, and as mere intangible rights or privileges, for the same reason, are incapable of abutting on anything, it is clear the assessment was unauthorized."

Another case relied on is that of Davis v. Newark, 54 N. J. Law, 144, 23 Atl. 276, in which it was said:

"It appears, however, that the strip of land thus owned has been dedicated to public use as a highway and forms part of the avenue."

The railway company here holds an entirely different estate. Its right is not merely an intangible privilege or an easement, but under the terms of the dedication is a fee-simple title. Under the provisions of section 511, Rev. Laws 1910, the terms of the dedication are to all intents and purposes a general warranty and sufficient conveyance to vest the fee simple of the lands described therein. Under section 1175 of this statute every estate in land conveyed by deed shall be deemed an estate in fee simple, unless limited by express words. Under section 1382 of this statute authority is given to the railway company to acquire land and to sell the same when no longer necessary to its use. In construing these provisions of the statute this court, in an opinion by Mr. Justice Turner, in the case of M., K. & T. Ry. Co. v. City of Tulsa, 45 Okla. 382, 145 Pac. 398, held that the railway company took the fee to the right of way under a general warranty deed. The United States Circuit Court of Appeals in the case of Gilbert v. M., K. & T. Ry. Co., 185 Fed. 102, 107 C. C. A. 320, held to the same effect. In the case of City v. Electric Co., 48 Wash. 599, 94 Pac. 194, 15 L. R. A. (N. S.) 486, relied upon by counsel, the court said:

"The respondent's right in the street is in no sense a lot, block, * * * or parcel of land. It neither owns the fee of the street over which its tracks are laid and its cars are operated, nor does it have dominion or control over that portion of the street. On the contrary, the fee of the street rests in the abutting property holders, to whom it will revert when the interests of the public therein cease from any cause, and dominion and control over it is vested in the public authorities, in whom it will remain as long as the street retains its public character."

The dominion and control of the strip of land in question here is not in the city authorities. If the street should be vacated by the city authorities, this private right of way would not revert to the abutting owners, but would continue to be the property of the railway company. The company took the fee from the original grantors by the dedication before the abutting owners acquired their titles.

Section 7 of article 9 of the Constitution controls the fourth contention that the right of way of the railway company cannot be assessed. The section reads as follows:

"The rolling stock and all other movable property belonging to any railroad, transportation, transmission, or other public service corporation in this state, shall be considered personal property, and its real and personal property, or any part thereof, shall be liable to execution and sale in the same manner as the property of individuals; the Legislature shall pass no laws exempting any such property from execution and sale."

It was said in the case of Figg v. L. & N. R. Co., supra:

"The purpose for which the lot is used cannot affect the question of its liability for the cost of street improvement."

It is said in Dillon on Municipal Corporations, § 1451, fourth volume:

"According to the view very generally held, land occupied and used by railroad companies for roadbeds, depots, freighthouses and other corporate purposes, whether the company be owner of the fee or has only a easement or qualified right therein, is to be regarded as real estate, which may be subjected by the Legislature to special assessment for the opening, paving, and grading of streets and for other local improvements in the same manner as the real property of private individuals. But this view is not uniformly accepted."

In the case of E. H. & C. St. R. Co. v. City of Jackson, 96 Miss. 547, 51 South. 802, it was said:

"In the absence of any special provision in the charter of the street railway company requiring it to share its burden of paving the street which it occupies with its road, it is well settled by the weight of authority that the street railway company, as well as any other property owner on the street, may be required to pay its pro rata part of the cost. It may be that the character of property belonging to the street railway is somewhat different from that of an abutting owner, but that a street railway company has property rights in the street which are subject to local assessment is supported by an almost unit of authority. They are abutting property owners in the sense of local assessment laws. They make a higher and a different use of the street from that of any other occupant of same. Their franchise is valuable, and often exclusive. (Gray's Limitation on Taxing Power, §§ 1925-1933."

We might dispose of the fifth contention, that the private right of way in question is not susceptible to benefits, and under the evidence offered is not benefited by the improvements, by saying this is a matter to be determined by city authorities. The Legislature authorized the city authorities to lay out improvement districts and determine when the street should be improved. Sec-

tion 7, art. 10, of the Constitution reads as follows:

"The Legislature may authorize county and municipal corporations to levy and collect assessments for local improvements upon property benefited thereby, homesteads included, without regard to a cash valuation."

The right to impose such a tax is based upon a presumed benefit. If a property owner is an abutting owner, he must bear his share of the burden because the Legislature has so directed. In the case of M., K. & T. Ry. Co. v. City of Tulsa, supra, it was said:

"Whether lots abutting on a street improvement and included in a railroad right of way are in fact benefited by the street improvement is a legislative question, and, having been settled by the legislative power of the city, is conclusive on us."

This identical question was presented to the Supreme Court of the United States in the case of L. & N. R. Co. v. Paving Co., 197 U. S. 430, 25 Sup. Ct. 466, 49 L. Ed. 819. There it was urged that the railroad company was not benefited. The court said:

"The amount of benefit which an improvement will confer upon particular land, indeed whether it is a benefit at all, is a matter of forecast and estimate. In its general aspects, at least, it is peculiarly a thing to be decided by those who make the law. * * * A statute like the present manifestly might lead to the assessment of a particular lot for a sum larger than the value of the benefits to that lot. The whole cost of the improvement is distributed in proportion to area, and a particular area might receive no benefits at all, at least if its present and probable use be taken into account. If that possibility does not invalidate the act it would be surprising if the corresponding fact should invalidate an assessment. * * * The plea plainly means that the improvement will not benefit the lot because the lot is occupied for railroad purposes and will continue so to be occupied. * * * That, apart from the specific use to which this land is devoted, land in a good-sized city generally will get a benefit from having the streets about it paved, and that this benefit generally will be more than the cost, are propositions which, as we already have implied, a Legislature is warranted in adopting. But, if so, we are of opinion that the Legislature is warranted in going one step further and saying that on the question of benefit or no benefit the land shall be considered simply in its general relations and apart from its particular use."

To the same effect is the case of Appeal of N. B. & M. R. Co., 32 Cal. 500, in which the court said:

"But whether the result anticipated will be realized is not a question for us. The jurisdiction and the duty to determine whether the public wants demanded, and whether the benefits likely to result, would be sufficient to justify the expenditure, was devolved by law, under prescribed restrictions, upon the board of supervisors. That question they have determined."

The sixth proposition urged that the decision of the United States District Court in the case of Oklahoma Railway Co. v. City of Oklahoma City is res judicata, has no application. While it is true that the railway company and the city were both parties to that action as well as this, the paving company here was not a party there, and the issues there were not identical with the issues here. In that case issues were presented which do not arise in this case. But if it be said that the judgment of that court was to the effect that under the statute and ordinances of the city lands belonging to the railway company similarly situated to the land in question are not subject to assessment, the doctrine of res judicata cannot apply. This doctrine cannot be applied to judgments and decrees which merely interpret general statutes, and the obligations of citizens under them, except in so far as the judgment and decree made involves findings of fact to which such interpretation has been applied. Mercantile Nat. Bank of Cleveland v. Lander (C. C.) 109 Fed. 21; City of Davenport v. Chicago, R. I. & P. Ry. Co., 38 Iowa, 633.

It is suggested by counsel that this court should determine by what description the tract of land in controversy should be assessed, that is, whether as a lot, quarter block, or irregular tract. This question is not properly within the issues presented on the record. It does not appear to have been presented to the trial court. The contention made by plaintiff below was that the assessment was invalid for the reason that the property was not accurately described. The decree of the trial court sustains this contention and commands the city authorities to reassess this private right of way by proper description, and to take such steps as may be necessary to properly assess said property. The decree does not direct the commissioners as to the description.

The judgment of the trial court is affirmed.

All the Justices concur except KANE, J., who dissents.